James OWENS, Plaintiff-Appellant,

v.

Albert E. RUSH, Leonard M. Robinson, Clarence Gnadt, Elmer Inthrum and Ollie Swenson and Wabaunsee County Kansas by its Board of County, Commissioners: Joe McClure, Ollie Swenson and Elmer Imthurn, Defendants-Appellees.

No. 78–1753.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 30, 1979.

Decided June 29, 1981.

---

Fred W. Phelps, Jr., Attorney, Topeka, Kan., for plaintiff-appellant.

Robert E. Tilton, Topeka, Kan. (Tilton & Dillon, Topeka, Kan., were on brief), for Joseph F. Rush, Executor of the Estate of Albert E. Rush, Deceased, defendant-appellee.

Bill Baldock, Attorney, Alma, Kan., on brief, for Wabaunsee County, Kansas and Wabaunsee County Commissioners, defendants-appellees.

Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

Plaintiff-appellant James Owens sought relief under the civil rights statutes, 42 U.S.C. §§ 1983, 1985(c), and 2000e, *et seq.*, claiming that the defendants-appellees [1] unlawfully conspired against him and discharged him from his position in the County Sheriff's Department in retaliation for helping his wife Anne file an EEOC complaint against them.[2] On the motion of the defendants the district court dismissed "[a]ll causes of action predicated upon 42 U.S.C. §§ 1983 and 1985 . . . for the reasons given in *Abeyta v. Town of Taos*, 499 F.2d 323 (10th Cir. 1974)." I R. 155. In a separate written order the district court also granted summary judgment in favor of the defendants on plaintiff's Title VII claim on the ground that plaintiff came within the "personal staff" exception of 42 U.S.C.

---

1. The defendants in this action are Joseph F. Rush, executor of the estate of Albert E. Rush, former sheriff of Wabaunsee County, Kansas, Leonard M. Robinson, Wabaunsee County Attorney, Clarence Gnadt, Elmer Imthurn, and Ollie Swenson, Wabaunsee County Commissioners, and Wabaunsee County, Kansas, by its Board of County Commissioners—Joe McClure, Ollie Swenson and Elmer Imthurn.

2. James and Anne Owens were the named plaintiffs in this civil rights action. The disposition of Anne's claims is reviewed in *Owens v. Rush*, 636 F.2d 283 (10th Cir.).

§ 2000e(f), thereby exempting him from the protection of Title VII. I R. 177–78. This timely appeal followed.

I

### The factual background [3]

In August 1970 plaintiff and his wife Anne were appointed by Sheriff Albert E. Rush to positions in the Sheriff's Department of Wabaunsee County, Kansas. Plaintiff was hired as Undersheriff and was second in command of the Sheriff's Department behind Sheriff Rush. Mrs. Owens was employed as a deputy and had various assigned duties including clerical work.

In January 1976 Mrs. Owens sent a letter on the Sheriff's letterhead to the Board of County Commissioners complaining that she was receiving less pay than certain male employees who were jailers. She suggested in the letter that the county was in violation of the Equal Pay Act and that the Board should either raise her salary or lower the salaries of the male employees. Shortly thereafter the Board accepted her suggestion and lowered the salaries of three male employees. A week later the Sheriff successfully restored the pay levels of the male employees involved.

Sheriff Rush first learned of Mrs. Owens's letter to the Board from defendant Robinson, the County Attorney, on the evening of March 2, 1976. At that time Robinson also told the Sheriff that Mrs. Owens had indicated to him earlier in the day that she intended to see Fred Phelps, her attorney, the next day about a civil rights action. On March 3 the plaintiff drove his wife in their own pickup to Topeka, Kansas, to see her attorney. The Sheriff and Robinson also drove to Topeka, which they explained was done to see if the plaintiff and his wife had used a county car for the trip. Later in

the evening that same day the Sheriff and Robinson went to visit defendant Imthurn, the Chairman of the Board of County Commissioners, to see the letter which Mrs. Owens had written to the Board.

On the next day, March 4, the Sheriff confronted Mrs. Owens in their office and demanded an explanation from her for her actions. Between March 4 and March 12, Robinson telephoned the clerk of the federal district court each day to determine if a law suit had been filed by Mrs. Owens's attorney. On March 12 both plaintiff and his wife were served with written notices of termination by the Sheriff.

On March 15 plaintiff and his wife filed suit in federal district court alleging violations of various constitutional and statutory rights under 42 U.S.C. §§ 1983 and 1985(c). After exhausting their administrative remedies and receiving "Right to Sue" letters, plaintiff and his wife filed an amended complaint to include allegations of violations under Title VII, 42 U.S.C. § 2000e, et seq. Plaintiff's claims were disposed of by the district court prior to trial on the grounds previously mentioned above.

On this appeal plaintiff argues that the trial court erred: (1) in failing to construe the record in the light most favorable to the plaintiff, the non-moving party, as required by Rule 56, Fed.R.Civ.P.; (2) in failing to recognize the public policy considerations behind Title VII retaliation claims; (3) in concluding that he falls within the "personal staff" exception of § 2000e(f); and (4) in ruling that he failed to state a claim pursuant to 42 U.S.C. §§ 1983 and 1985(c). Further evidence will be detailed as necessary in discussing plaintiff's appellate contentions, to which we now turn.

II

### The Title VII claim

In his second amended complaint the plaintiff claims that the defendants unlaw-

---

**3.** Since the Title VII claim was decided as a matter of summary judgment, we here summarize the facts revealed in the record before the court as shown by depositions, stipulations, the preliminary injunction hearing transcript, and

the like. The claim under §§ 1983 and 1985 was decided on a motion to dismiss and we will discuss in Part III, *infra*, those claims of plaintiff as stated in the Pretrial Order and the Second Amended Complaint.

fully discharged him from his position in the County Sheriff's Department in violation of 42 U.S.C. § 2000e–3(a) because he assisted his wife in filing a sex discrimination charge with the EEOC against them. After a pretrial order had been entered the defendants moved for summary judgment on this Title VII claim arguing, *inter alia*, that the plaintiff as Undersheriff was on the "personal staff" of Sheriff Rush, an elected county official, and was therefore not an "employee" within the meaning of 42 U.S.C. § 2000e(f) and not entitled to Title VII protection.[4] Agreeing with the arguments of the defendants, the district court held that "plaintiff James Owens is just the sort of person Congress meant to exempt from coverage under Title VII pursuant to 42 U.S.C. § 2000e(f), and the 'personal staff' language therein." I R. 177. Accordingly the district court granted summary judgment in favor of the defendants on plaintiff's Title VII retaliation claim.[5]

On this appeal plaintiff claims that the district court erred in holding that he came within the "personal staff" exception of § 2000e(f) and was therefore not an "employee" subject to Title VII protection. He argues that Congress intended for § 2000e–3(a) to provide "exceptionally broad protection" against retaliation for those persons who have participated "in any manner" in Title VII proceedings and that the courts should implement Congress' intent by narrowly construing the "personal staff" exception of § 2000e(f) and broadly construing

§ 2000e–3(a). He says that the district court's ruling "ignores the intent of Congress" and that summary judgment for the defendants is inappropriate because the record when viewed in a light favorable to him clearly shows that he was an employee of Sheriff Rush. Brief of Appellant at 7–16.

■ In order to prove that the defendants unlawfully retaliated against him in violation of § 2000e–3(a),[6] the plaintiff must show, *inter alia*, that he was an "employee" within the meaning of that provision. Under the definition provided by statute, 42 U.S.C. § 2000e(f),

[t]he term "employee" means an individual employed by an employer, *except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff*, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. (Emphasis added).

It is beyond question here that Sheriff Rush was elected to the position of County Sheriff by the voters of Wabaunsee County, a political subdivision of the State of Kan-

---

**4.** Defendant Robinson, the County Attorney, argued that he was not plaintiff's employer and therefore could not be subject to Title VII liability under the facts alleged by the plaintiff. I R. 93, 99–100. The district court agreed and dismissed the Title VII claim made against defendant Robinson. I R. 155. The plaintiff does not challenge this ruling on appeal. *See* Brief of Appellant at 19; *see also Owens v. Rush, supra*, 636 F.2d at 285.

**5.** In the same written order the district court also determined that Anne Owens did not come within the "personal staff" language of § 2000e(f), despite being "vested with the full powers of a sheriff's deputy" since her duties were largely clerical in nature. I R. 176. The

defendants did not challenge this ruling in the wife's appeal. *See Owens v. Rush, supra*, 636 F.2d 283.

**6.** 42 U.S.C. § 2000e–3(a) provides in part that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

sas. *See* Kan.Stat. § 19–801a (1974 & Supp. 1979). It is clear too that plaintiff was appointed by Sheriff Rush to be on his staff as Undersheriff, a position which is not subject to the state's civil service laws. *Id.* §§ 19–803, 19–4303, 19–4314; IV R.59, 63–64. Thus the critical issue is whether the plaintiff, as Undersheriff, was employed in the type of position which Congress intended to exempt from Title VII coverage under the "personal staff" exception found in § 2000e(f).

██ Initially we note that the scope of the "personal staff" exception is governed by federal rather than state law which is only "relevant insofar as it describes the plaintiff's position, including his duties and the way he is hired, supervised and fired." [7] *Calderon v. Martin County,* 639 F.2d 271, 273 (5th Cir.). Furthermore, the provisions of Title VII do not provide a statutory definition for the term "personal staff." Under these circumstances courts generally interpret the words in accordance with their ordinary, everyday meaning, absent some contrary indication in the legislative history. *See, e. g., United States v. Elledge,* 614 F.2d 247, 250 (10th Cir.).

██ The legislative history of § 2000e(f) indicates that Congress intended that the personal staff exception be construed narrowly. The report of the conference committee of the House and Senate on this section states in pertinent part:

> It is the intention of the conferees to exempt elected officials and members of their personal staffs, and persons appointed by such elected officials as advisors or to policymaking positions at the highest levels of the departments or agencies of State or local governments,

such as cabinet officers, and persons with comparable responsibilities at the local level. *It is the conferees [sic] intent that this exemption shall be construed narrowly.* Also, all employees subject to State or local civil service laws are not exempted. [1972] U.S.Code Cong. & Ad.News 2180 (emphasis added).

The Senate debate on this section also sheds some light on the intended scope of this exception to Title VII coverage. Senator Ervin, the sponsor of the original Senate amendment containing the exemption, agreed during the debate that the purpose of the amendment was "to exempt from coverage those who are chosen by the Governor, or by the mayor or the county supervisor, whatever the elected official is, and who are in a close personal relationship and an immediate relationship with him. Those who are his first line advisers." 118 Cong. Rec. 4492–93 (1972); *see also Gearhart v. Oregon,* 410 F.Supp. 597, 600–601 (D.Or.). Thus it would appear that Congress intended for the personal staff exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official.

The courts have construed the exception narrowly and have generally looked to the nature and circumstances of the employment relationship between the complaining individual and the elected official to determine if the exception applies. *See, e. g., Ramirez v. San Mateo County,* 639 F.2d 509, 513 (9th Cir.); *Calderon v. Martin County, supra,* 639 F.2d at 273; *Wall v. Coleman,* 393 F.Supp. 826, 829–30 (S.D.Ga.). In *Wall,* a female attorney brought suit under Title VII alleging that she was denied employment as an assistant state district attorney because of her sex. After examining the

---

7. The plaintiff claims that the district court specifically found that he was an employee of Sheriff Rush and that this finding is in "direct contradiction" with the court's conclusion that he was not an employee within the meaning of § 2000e(f). Brief of Appellant at 10, 15. We agree that the district court did state that "[a] deputy or undersheriff must be considered an

'employee' of the officeholder, for no other entity or person exercises control over the appointment of such persons or the discharge of their duties." I R. 174. We think, however, that the district court was referring in this instance to plaintiff's employment status under state law which, as noted above, does not control the interpretation of federal law.

legislative history of the "personal staff" exception, the court considered the nature and circumstances of the employment relationship between the district attorney and his assistants. It found that under Georgia law an assistant district attorney works for and serves at the pleasure of the district attorney who appoints him, that the assistant can perform any function appropriate to the office of district attorney which the elected official might delegate to him, and that the assistant represents the district attorney in the eyes of the public in everything he does as an assistant district attorney. Due to the character of the employment relationship the court concluded that an assistant district attorney in Georgia is a member of the district attorney's personal staff for purposes of Title VII litigation since "[a] more personal relationship would be hard to create." *Wall v. Coleman, supra,* 393 F.Supp. at 829–31.

The Ninth Circuit has recently indicated that the character of the employment relationship is a critical factor in determining the applicability of the personal staff exception. *See Ramirez v. San Mateo County, supra.* In *Ramirez* an applicant for the position of deputy district attorney claimed, *inter alia,* that he was denied employment in violation of Title VII by the district attorney, an elected county official. In upholding dismissal of the Title VII claim the court noted that the position of deputy district attorney was "similar" to the position of assistant district attorney in *Wall v. Coleman, supra.* In both cases the elected official had exclusive powers of selection and retention of his assistants, thus requiring those appointed individuals to perform to the elected official's personal satisfaction. This high level of personal accountability to one person was, according to the court, "consistent with the highly sensitive and confidential nature of the work which deputies perform as well as with the considerable powers of the deputy to represent the district attorney in legal proceedings and in the eyes of the public." *Ramirez v. San Mateo County, supra,* 639 F.2d at 513.

The court concluded that "when a job includes this level of personal accountability to one elected official, it is precisely the sort of job Congress envisioned to be within the 'personal staff' of that official and thus exempt from Title VII." *Id.*

■ Here the position of Undersheriff is analogous to the positions in *Wall* and *Ramirez.* The Undersheriff serves at the pleasure of his superior, the County Sheriff, who has plenary power of appointment and removal. *See* Kan.Stat. §§ 19–803, 805, 805c. The fact that state law permits the Sheriff to have this power shows that the state intends for the Undersheriff to be personally accountable to only one public official. Such a level of personal accountability is reasonable since the Sheriff is both politically and civilly liable for any default or misconduct by the Undersheriff in the performance of his official duties. *Id.* §§ 19–801a, –804 to 805, –811 to 813, –816 to 817.

There are other factors, not present in *Wall* or *Ramirez, supra,* which provide a sharper picture of the essential interaction between a Kansas County Sheriff and his Undersheriff. Plaintiff himself admitted during a preliminary injunction hearing that as Undersheriff he had "a very close working relationship with the sheriff." IV R. 65. No doubt this was necessary since plaintiff was "second in authority under the sheriff" and acted on behalf of the sheriff when he was not available or present. *Id.* at 63–64. Moreover the Undersheriff serves as Sheriff in the event of a vacancy in that office until a new Sheriff is appointed by the Governor. Kan.Stat. § 19–804. When such a contingency occurs the Sheriff or his estate continues to be liable on the Sheriff's bond for any default or misfeasance by the Undersheriff in the performance of his official duties. *Id.*

Considering the nature of the Undersheriff's position and the close working relationship required to perform effectively in the position, we must conclude that plaintiff

was in the type of job which Congress intended to be within the personal staff exception of § 2000e(f) and thus outside Title VII coverage.[8] Accordingly we hold that the district court did not err in granting summary judgment for the defendants on plaintiff's Title VII claim.

### III

### *The claim under §§ 1983 and 1985(c)*

Plaintiff's remaining major contention concerns his constitutional claim asserted through 42 U.S.C. §§ 1983 and 1985(c). He argues that the district court erred in dismissing that claim by its order that "[a]ll causes of action predicated upon 42 U.S.C. §§ 1983 and 1985 are dismissed for the reasons given in *Abeyta v. Town of Taos*, 499 F.2d 323 (10th Cir. 1975 [1974])." Essentially he says his allegations, construed in the light most favorable to him, support his claim pursuant to §§ 1983 and 1985(c); that all defendants participated in a conspiracy to deprive plaintiff and his wife of their employment and of their right to proceed with Title VII procedural remedies;

that no trial was held, and his complaint should not have been dismissed on motion "unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief," citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. (Brief of Appellant at 17–18).

Defendants contend that plaintiff had no property right in his position, that his public employment did not arise out of a contractual employment relationship, that under Kansas law he had no vested interest in his position or his salary protected by the Federal Constitution, and that no equal protection or First Amendment claim was properly stated by plaintiff. (Brief of Appellees at 8–9, 15–17).

The issue is troublesome because the ruling was made on the basis of the pleadings alone. The court's order (I R. 155) does not refer to any matters presented by way of affidavits or depositions.[9] We thus focus on the plaintiff's averments of his constitutional claims under the First and Fourteenth Amendments as set out in the Pre-

---

8. Plaintiff urges this court to follow the decision in *Howard v. Ward County*, 418 F.Supp. 494, 503 (D.N.D.) wherein the district court held that a county deputy sheriff in North Dakota was an employee within the meaning of Title VII. Brief of Appellant at 15–16. That case, however, is distinguishable. Unlike the Undersheriff in Kansas, the deputy sheriff under North Dakota law is an employee of the state or county, not the sheriff. Additionally the district court in *Howard* specifically found that the sheriff had "only limited discretion" in the selection of his deputies. *Id.* at 502. This is not the case in Kansas where the County Sheriff, as noted, has exclusive power of appointment and removal and may appoint as many deputies as his budget will allow. More importantly, the plaintiff in this case is second in authority behind the Sheriff and must assume control of the Sheriff's office whenever a vacancy exists in that office. No similar circumstances existed in *Howard*.

9. Depositions of plaintiff and his wife had been filed before the hearing on the motions from which the dismissal of the § 1983 and § 1985(c) claims resulted. A preliminary injunction evidentiary hearing had also occurred before that time, although the transcript of that hearing

was not filed until several months after the hearing on the motions.

The motions before the court were defendants' alternative motions to dismiss or for summary judgment. Since the order of dismissal (I R. 155) does not exclude the evidentiary matters on file, it may well be that this ruling dismissing the § 1983 and § 1985(c) claims should be considered as a summary judgment. *See* Rule 12(b) and (c), F.R.Civ.P.; *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569; *Torres v. First State Bank*, 550 F.2d 1255, 1257 (10th Cir.); *Smith v. Yellow Freight Systems, Inc.*, 536 F.2d 1320, 1321–22 (10th Cir.); *see generally*, 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 at 677–78 (1969 & Supp.1980). However, because the order refers to no facts shown or admissions made in the papers on file and instead states only that the dismissal of the constitutional claim is based on the *Abeyta* case, and that the motions of defendants to dismiss were sustained, we will treat the ruling as a dismissal for failure to state a claim and will concentrate on the averments set out in the Second Amended Complaint and the Pretrial Order.

trial Order and the Second Amended Complaint.

The allegations made are essentially that jurisdiction is claimed under the First, Thirteenth and Fourteenth Amendments, *inter alia*; and that a conspiracy by defendants is charged. Plaintiff states that his wife engaged the services of an attorney to prepare a Title VII sex discrimination charge; that the formal charge was in fact prepared by her attorney, executed by Mrs. Owens, and directed for filing with the EEOC district office; that "plaintiff Anne was therein assisted in such matter by her husband, plaintiff James Owens . . ." with a copy of the written charge being attached (I R. 55, 62); that defendants learned of such conduct by causing plaintiff and his wife to be surreptitiously followed at night to her attorney's office, and that "defendants did immediately thereupon and thereafter conspire together and with others to retaliate against plaintiffs and to deprive plaintiffs of rights secured to them by the constitution and laws of the United States, without due process of law, and to deny to plaintiffs the equal protection of the law, all under color of state law." Pretrial Order, I R. 62.

In the averments set out in the Pretrial Order it was stated further that defendants held meetings to devise means of retaliating and exerting unlawful pressure on plaintiff and his wife to discontinue their legal proceedings, that defendants Rush and Robinson met with plaintiffs, individually and together, to remonstrate and threaten plaintiff and his wife to withdraw their lawful activities, and that defendants

discharged plaintiff and his wife on March 11, 1976. We note that this was eight days after the visit by plaintiff and his wife to the attorney concerning her Title VII charge.

■ We must agree that the dismissal in the face of plaintiff James Owens's allegations was in error. We are mindful that in the companion case of his wife, *Owens v. Rush*, 636 F.2d 283, 285 (10th Cir.) we stated that although she could possibly have presented a colorable § 1983 claim for deprivation of a liberty interest or for discharge for exercising First Amendment rights, the Second Amended Complaint did not adequately present such claims by her and that the trial judge did not address them in the order dismissing those claims. I R. 155. Here, however, we are concerned with the husband's claim. In the context of the particular averments he has made and the constitutional protections he may invoke under the principles of *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405, and other cases discussed below, we cannot agree with the defendants that dismissal on the pleadings was justified. And we cannot agree that dismissal of Mr. Owens's constitutional claim of retaliatory discharge for his association with and assistance in his wife's Title VII charge is supported by the various reasons given in *Abeyta v. Town of Taos.*[10]

■ Dismissal of the constitutional claim of Mr. Owens was not justified unless it appeared beyond doubt that he could prove no set of facts in support of his claim which

---

10. In *Abeyta* we affirmed the district court's rejection of a procedural due process claim, holding that former municipal employees had no Fourteenth Amendment property interest in a public office or employment, absent circumstances indicating a continued right to employment. Here no claim is made by the plaintiff that the defendants' actions denied him procedural due process. Consequently this aspect of the *Abeyta* decision provides no support for the district court's decision to dismiss plaintiff's claim under §§ 1983 and 1985.

We also held in *Abeyta* that the record supported the trial court's findings, which were

made after an evidentiary hearing, that the plaintiffs' discharge from public employment was for legitimate reasons and not in retaliation for the exercise of their right of free speech. Here, where no trial has occurred, the *Abeyta* opinion cannot support the dismissal of Mr. Owens's constitutional claim under the First and Fourteenth Amendments on such a basis.

The remaining holding in *Abeyta*, affirming a denial of equitable relief under special circumstances, is not relevant here.

would entitle him to relief. *Conley v. Gibson, supra*, 355 U.S. at 45–46, 78 S.Ct. at 101–102. "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90. As noted, averments are made by Mr. Owens that he accompanied his wife to her attorney's office; that her Title VII charge was prepared by her attorney, executed and directed for filing; that she was assisted by plaintiff in such matter; that defendants learned of their conduct by causing plaintiff and his wife to be surreptitiously followed at night to her attorney's office; and that defendants conspired to retaliate against plaintiffs and committed overt acts, including discharge of plaintiff and his wife from their employment. (I R. 62–63).

■ These circumstances as alleged by Mr. Owens come within the activities held to be protected by the First Amendment in *NAACP v. Button, supra*: "assisting" litigation vindicating civil rights; attending meetings on necessary legal steps; and associating for the purpose of assisting persons seeking legal redress—these being "modes of expression and association protected by the First and Fourteenth Amendments . . . ." 371 U.S. 420–21, 428–29, 83 S.Ct. 331–332, 335–336; *see In re Primus*, 436 U.S. 412, 426, 431, 98 S.Ct. 1893, 1901, 1904, 56 L.Ed.2d 417; *Rampey v. Allen*, 501 F.2d 1090, 1098 (10th Cir.) (en banc), *cert. denied*, 420 U.S. 908, 95 S.Ct. 827, 42 L.Ed.2d 838; *see generally Familias Unidas v. Briscoe*, 619 F.2d 391, 398–99 (5th Cir.).[11] The type of conduct charged to the defendants runs afoul of the Amendment because of the danger of "smothering all discussion

looking to the eventual institution of litigation . . . ." *NAACP v. Button, supra*, 371 U.S. at 434, 83 S.Ct. at 338. And such activities supportive of plaintiff's wife would be protected by the First and Fourteenth Amendments, although they were private and not public activities. *See Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 414, 99 S.Ct. 693, 695, 58 L.Ed.2d 619; *Familias Unidas v. Briscoe, supra*, 619 F.2d at 399.

■ The First Amendment clearly affords protection against actions penalizing or inhibiting the exercise of such constitutional rights, even absent a contractual or tenure right to continued public employment. *Perry v. Sindermann*, 408 U.S. 593, 596–98, 92 S.Ct. 2694, 2696–2698, 33 L.Ed.2d 570. The Supreme Court has made it emphatically clear that even though a plaintiff's liberty or property interest is required as a premise for a procedural due process claim, *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, such an interest is "irrelevant to his free speech claim." *Perry v. Sindermann, supra*, 408 U.S. at 599, 92 S.Ct. at 2698. Lack of any property interest or contractual right in his public employment does not defeat the plaintiff's First Amendment claim alleging retaliation against him for exercise of his own First Amendment right of association and assistance to aid his wife's preparation of her charge. *Id.* at 596–97, 92 S.Ct. at 2696–2698. Thus the *Abeyta* holding, premised on the lack of a protected property or liberty interest in public employment there to sustain a procedural due process claim, does not support dismissal of plaintiff Owens's First Amendment claim. *See* note 10, *supra*.

11. The fact that the plaintiff husband's injury was to his employment, and that his assistance and association were lent to aid his wife in her Title VII charge relating to her job, does not destroy his constitutional claim. Clearly plaintiff has sufficiently alleged that the decision to discharge him from his position as Undersheriff was an infringement of *his* constitutionally protected rights to assist his wife and to be free from unconstitutional retaliation for doing so.

Consequently he has alleged an injury in fact to his recognized legal interests and therefore has standing to assert his constitutional right to associate and afford assistance to his wife's cause. *See In re Primus, supra*, 436 U.S. at 431, 98 S.Ct. at 1904; *NAACP v. Button, supra*, 371 U.S. at 428, 83 S.Ct. at 335; *Morrison v. Jones*, 607 F.2d 1269, 1275 (9th Cir.) (per curiam), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237.

Nor does our earlier holding in Part II on the personal staff exception likewise require a holding that plaintiff has no constitutional right under the First and Fourteenth Amendments here treated in Part III. Because of the statutory exception, the plaintiff Owens as Undersheriff has no substantive right conferred on him by Title VII protecting his employment. However, Title VII did not impair in any way his independent, substantive rights created by the First and Fourteenth Amendments—including his right of association and assistance to his wife in her litigation. "[S]ubstantive rights conferred in the 19th Century were not withdrawn, *sub silentio*, by the subsequent passage of the modern statutes." *Great American Fed. S. & L. Ass'n v. Novotny*, 442 U.S. 366, 377, 99 S.Ct. 2345, 2351, 60 L.Ed.2d 957; *see also Johnson v. Railway Express Agency*, 421 U.S. 454, 457–61, 95 S.Ct. 1716, 1718–1721, 44 L.Ed.2d 295; *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–1020, 39 L.Ed.2d 147; *Holmes v. Finney*, 631 F.2d 150, 154 (10th Cir.); *cf. Davis v. Passman*, 442 U.S. 228, 247, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846. Unlike *Novotny*, such independent substantive rights are here averred to have been violated by retaliating against plaintiff James Owens for the exercise of his own First and Fourteenth Amendment rights to assist his wife in her litigation, in addition to alleged infringement of plaintiffs' rights relating to their Title VII charges.[12] *Cf. Briscoe, Inc. v. NLRB*, 637 F.2d 946, 952 (3rd Cir.).

■ There may be a question whether the plaintiff's conduct conflicts with his performance of his duties as Undersheriff. The assertion of such an interest by defendants and of a conflict of his actions with plaintiff's official functions might be asserted as a defensive matter, calling for a balancing in deciding whether plaintiff's claimed First and Fourteenth Amendment rights should prevail. *See Branti v. Finkel*, 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574; *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 570, 88 S.Ct. 1731, 1734, 1735, 20 L.Ed.2d 811. However we are not at that point on this claim. These are defensive matters and such a governmental interest must be shown by the defendants. *See In re Primus, supra*, 436 U.S. at 432, 98 S.Ct. at 1904; *Elrod v. Burns*, 427 U.S. 347, 362, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (plurality opinion). We indicate no view on this potential issue. It suffices today to hold that Mr. Owens's claim as averred under the First and Fourteenth Amendments should not have been dismissed on motion.[13]

Accordingly, the summary judgment rejecting plaintiff-appellant's Title VII claim on the basis of the personal staff exception is affirmed; the order dismissing his constitutional claim asserted through 42 U.S.C. §§ 1983 and 1985(c) is vacated and the case is remanded for further proceedings on the latter claim.

BARRETT, Circuit Judge, concurring in part and dissenting in part:

I fully concur in Part II of the majority opinion. I must, however, respectfully dis-

---

12. Plaintiff James Owens alleged a conspiracy to retaliate against him in violation of Title VII *and* to deprive him of rights secured to him by the Constitution and laws in violation of §§ 1983 and 1985(c). I R. 51–52, 61–62, 64. In the pleadings and by his brief on appeal, pp. 17–19, he is clearly alleging a separate constitutional claim asserted through §§ 1983 and 1985(c) for damages, for unconstitutional acts by governmental officers, in addition to a Title VII claim for equitable relief, and thus the case is distinguishable from *Novotny* where the Court considered only a Title VII claim attempted to be asserted through 1985(c).

13. We are mindful that to a degree we have considered factors involved in such a defense in our discussion of the personal staff exception in Part II, *supra*. However, the balancing process relating to such a defense would encompass consideration not only of the functions of the office, but also of the particular conduct of the plaintiff James Owens in assisting his wife on her charge and its effect on his official duties. *See Pickering v. Board of Educ., supra*, 391 U.S. at 568, 570, 88 S.Ct. at 1734, 1735. These latter circumstances have not been developed or considered in the district court which dismissed this claim on motion.

sent from Part III. My remarks are hereafter directed to the troublesome aspects of Owens' §§ 1983 and 1985(3) claims discussed in Part III.

In my view, Owens' claims anchored to §§ 1983 and 1985(3) based upon his allegation of a conspiracy in violation of his rights secured under the First, Thirteenth and Fourteenth Amendments to deprive *him* of his employment as Undersheriff must fail just as Owens failed under his Title VII claim discussed in Part II of the majority opinion. This, I believe, follows because of the "personal staff" relationship between Undersheriff Owens and Sheriff Rush. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). I recognize that neither § 1983 or § 1985(3) contain the "personal staff" exception language found in Title VII. Even so, it defies common sense to ignore the fact that while Owens' "personal staff" relationship to Sheriff Rush under Title VII bars him from raising any challenge to his discharge in light of the Kansas statute, nevertheless Owens may challenge his discharge under §§ 1983 and 1985(3) simply because these statutes do not contain the "personal staff" exception language.

Federal statutes must be read in harmony. In cases of this type, where the *identical operative facts* are relied upon, the Civil Rights statutes must be given a common sense interpretation. Under Part II we hold that Undersheriff Owens was subject to discharge *at will* (and, thus, without cause) in accord with Kansas law and because of his "personal staff" relationship with Sheriff Rush recognized under Title VII. This, in effect, rendered Owens the Sheriff's *alter ego.* Based on this structure, I conclude that Owens is not in that category of public employees entitled to invoke §§ 1983 and 1985(3) in advancing First and Fourteenth Amendment protections recognized in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

I turn now to James Owens' §§ 1983 and 1985(3) claims as they relate to the allegations of a conspiracy involving his wife's contacts with an attorney in relation to her efforts to file a Title VII complaint. I do not believe that James Owens has "standing" in the sense of meeting the requirement of an "injury in fact" or falling within the "zone of interest" entitling him to any cause of action involving his wife's contractual dispute with Sheriff Rush.

James Owens has no identifiable constitutionally protected interest or right in his wife's continued employment. The simple allegation of "conspiracy" does not create standing in Owens to advance claims owned by and *in fact* advanced by Mrs. Owens. He cannot gain "standing" by simply alleging efforts he made on her behalf. James Owens' reliance on *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), *Givhan v. Western Line Consolidated School Dist.,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) and *Rampey v. Allen,* 501 F.2d 1090 (10th Cir., en banc, 1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 827, 42 L.Ed.2d 838 (1975) is misplaced. Those opinions recognize a specific, identifiable basis for standing.

Finally, I am puzzled by the treatment accorded *Abeyta v. Town of Taos,* 499 F.2d 323 (10th Cir. 1974). As I view it, the crux of *Abeyta* is that public office or public employment held *at will* does not create a property interest within the meaning of the Fourteenth Amendment.

I would affirm the District Court's dismissal of all causes of action relied upon by Undersheriff Owens.