Dale Gordon GOSS, Plaintiff,

v.

Mike SULLIVAN, Judith Uphoff, Robert E. Ortega, Duane Shillinger, Ronald Ruettgers, Defendants.

No. 92–CV–0192–J.

United States District Court,
D. Wyoming.

Dec. 6, 1993.

**1534**

Dale Gordon Goss, pro se.

Nicholas Vassallo, John W. Renneisen, Deputy Atty. Gen., Wyoming Atty. Gen., Cheyenne, WY, for defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR DISMISSAL, JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

This matter having come before the Court on Defendants' Motion for Dismissal, Judgment on the Pleadings or Summary Judgment, and the Court, having considered the materials filed both in support of and in opposition to the motion, together with the balance of the file herein, and being fully advised in the premises, now FINDS and ORDERS as follows:

### Background

Plaintiff Dale Gordon Goss is an inmate at the Wyoming State Penitentiary, in Rawlins, Wyoming. Plaintiff filed this civil rights action under 42 U.S.C. § 1983 on August 28, 1992, against defendants Mike Sullivan, Governor of the State of Wyoming; Judith Uphoff, Director of the Department of Corrections for the State of Wyoming; Robert E. Ortega, Prison Division Administrator of the Department of Corrections for the State of Wyoming; Duane Shillinger, Warden of the Wyoming State Penitentiary at Rawlins, Wyoming; and Ronald Ruettgers, Unit Manager of the Maximum Security Unit of the Wyoming State Penitentiary at Rawlins, Wyoming.

Plaintiff claims that the defendants violated his Eighth and Fourteenth Amendment rights by failing to protect the general prison population from the risk of contracting AIDS, by failing to inform the inmate population "as to which inmates pose a deadly threat," and by failing to ensure the health and well-being of the inmates. Complaint, at 3. Plaintiff seeks 1.75 million dollars in monetary damages.

Plaintiff's claims arise out of the following events as outlined in his Complaint: On February 7, 1991, plaintiff was involved in a fight with another inmate. Plaintiff alleges that the other inmate is and was a "known and dignosed [sic] carrier of the AIDS virus." Complaint, at 2. Plaintiff alleges that during the course of the fight, he cut his lip and the other inmate cut his hand, and the other inmate "deliberately wiped his hand across the plaintiff's mouth at least twice." *Id.* Plaintiff was transported to the Carbon County Hospital for stitches in his lip and was confined to his cell upon his return to the Penitentiary pending a disciplinary hearing.

The disciplinary hearing was held on February 11, 1991. Plaintiff was found to have acted in self defense and the charges that occurred as a result of the altercation were expunged from his prison record.

On February 12, 1991, plaintiff was transported once again to the Carbon County Hospital. At that time he was informed that the other inmate involved in the fight was a known AIDS carrier and that plaintiff needed to be tested. Plaintiff contends that his life has been placed in jeopardy as a result of his "blood to blood" contact with the other inmate, and that other inmates placed in a similar position are subjected to unreasonable risk.

Defendants have filed this motion to dismiss, for judgment on the pleadings or for summary judgment, asserting that the failure to segregate HIV-positive inmates, as well as the failure to inform other inmates as to the status of HIV-positive inmates, are not constitutional violations. They also contend that plaintiff has failed to allege any specific actionable conduct engaged in by the defendants and that plaintiff's equal protection claim is "unintelligible and fails to state a cognizable claim." Finally, defendants argue

they are entitled to immunity in their official capacities and to qualified immunity in their personal capacities.

In response to defendants' motion, plaintiff now alleges that he is not asking that all HIV-positive inmates be segregated from the inmate population or that the results of HIV tests be made available to the inmate population. *See* Answer to Defendants' Brief in Support of Their Motion for Dismissal, Judgment on the Pleadings or Summary Judgment, at 1. (Docket No. 20). Rather, he is asking that "any HIV positive inmate that has stated his intention to infect others with the HIV virus be segregated." *Id.* He further asserts that the other inmate involved in the altercation, Gary Fitzhugh, is a danger to the general prison population and that the prison administration was aware of the danger presented by Inmate Fitzhugh and did nothing to prevent him from having contact with the general population. *Id.* at 1–2. Affording plaintiff's submissions to the Court a liberal construction, the Court construes these allegations as a motion to amend plaintiff's Complaint. The motion to amend is granted. Accordingly, the allegations of the Complaint now turn upon the limited question as to whether plaintiff's constitutional rights were violated in the context of the administration's failure to segregate Inmate Fitzhugh from the general prison population.

In opposition to defendants' motion, plaintiff has submitted the sworn statements of three inmates, Shane A. Hill, Joseph O. Smizer and Anthony A. Harlow. According to Mr. Hill's statement, on February 2, 1991, Fitzhugh attacked plaintiff without provocation as plaintiff stood in the mail line. Mr. Hill saw blood on plaintiff's mouth and on Fitzhugh's hand and he saw Fitzhugh rub his bleeding hand back and forth across plaintiff's mouth several times. He contends that the three officers on the scene failed to intervene in the fight until the two inmates broke apart. At that time, the officers took control of plaintiff and Fitzhugh and escorted them away.

Mr. Smizer's statement indicates that he too witnessed the fight between plaintiff and Inmate Fitzhugh. He claims that one of the officers arriving on the scene said, "I'm not going to get into this because that's the guy with AIDS." *See* Statement of Joseph O. Smizer, Docket No. 22. He states that he saw Fitzhugh rub his cut hand into plaintiff's mouth and that the officers waited until both inmates were both up before doing anything about the fight. He claims to have heard Fitzhugh say that he would infect "whoever I can." *Id.*

■ The statement of Anthony A. Harlow provides no relevant or probative evidence pertinent to this motion. Mr. Harlow's statement contains nothing more than hearsay statements attributed to Inmate Fitzhugh and conclusory allegations that prison officials were aware that Fitzhugh was violent but nonetheless refused to segregate him from the general population. The statements are inadmissible, are not based upon personal knowledge as required by Fed.R.Civ.P. 56(e), and therefore will not be considered by the Court.

### Standard of Review

■ A constitutional claim under § 1983 should not be dismissed on motion unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *Meade v. Grubbs,* 841 F.2d 1512, 1526 (10th Cir.1988) citing *Owens v. Rush,* 654 F.2d 1370, 1378–79 (10th Cir.1981). Further, in considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must accept all of the allegations in the Complaint at face value, and must construe all allegations in the light most favorable to the plaintiff. *Id.* (citation omitted). Additionally, because the plaintiff is pro se, his Complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers." *Id.* citing *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam)).

■ Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact, and

that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party's burden may be met by identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Once the moving party has met its initial burden, the burden shifts to the party resisting the motion. That party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Manders v. Oklahoma ex rel. Dept. of Mental Health,* 875 F.2d 263, 265 (10th Cir.1989) citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. In determining whether these burdens have been met, the Court is required to examine all evidence in the light most favorable to the non-moving party. *Barber v. General Electric Co.,* 648 F.2d 1272 (10th Cir.1981).

### *Discussion*

Plaintiff's Eighth Amendment claim is based upon the allegation that he was placed in a life threatening situation because of the prison administration's failure to segregate a known carrier of a communicable disease, *i.e.* AIDS, from the general population. Plaintiff's equal protection claim appears to be based upon the same factual allegations as his Eighth Amendment claim, *i.e.*, that he and all other inmates are at risk because of the "lack of action" or failure of the prison administration to segregate AIDS-infected inmates from the general population.

■ Plaintiff's submissions to the Court must be given a liberal reading because of plaintiff's pro se status. Notwithstanding, the Court agrees with defendants that plaintiff's equal protection claim is vague and unintelligible and fails to state a claim upon which relief may be granted. Plaintiff's equal protection claim should therefore be dismissed.

[8] In his response to defendants' motion, plaintiff has conceded that the failure to segregate an AIDS-infected prisoner from the general prison population, as well as the failure to disclose the results of AIDS tests to the general prison population, are claims that fail to rise to the level of constitutional violations. Plaintiff is correct in conceding these issues as the weight of authorities hold that these allegations do not constitute violations of the Eighth Amendment's prohibition against cruel and unusual punishment. *See e.g. Robbins v. Clarke,* 946 F.2d 1331 (8th Cir.1991) (failure to segregate HIV-positive prisoners from the general population held not to constitute cruel and unusual punishment); *Glick v. Henderson,* 855 F.2d 536 (8th Cir.1988) (prison official's decision not to institute wholesale AIDS testing and segregation program was not unreasonable); *Johnson v. United States,* 816 F.Supp. 1519 (N.D.Ala.1993) (defendants' policy of not segregating prisoners with AIDS did not violate the Eighth Amendment); *Muhammad v. United States Bureau of Prisons,* 789 F.Supp. 449 (D.D.C.1992) (segregation of all HIV-positive prisoners or those with AIDS is not a remedy generally available to prisoners); *Portee v. Tollison,* 753 F.Supp. 184 (D.S.C.1990) (plaintiffs' claims that their civil rights were being denied by prison policy that did not adequately protect them from the risk of the AIDS virus because it allowed allegedly AIDS-infected inmates to work in kitchen and use same utensils rejected as insufficient to amount to Eighth Amendment violation since failure to test and failure to segregate did not constitute deliberate indifference); *Davis v. Stanley,* 740 F.Supp. 815 (N.D.Ala.1987) (court rejected Eighth Amendment claim of cruel and unusual punishment against sheriff who placed prisoner in cell with HIV-infected cellmate, finding that there was no deliberate indifference to the well-being of the prisoner); *Deutsch v. Federal Bureau of Prisons,* 737 F.Supp. 261 (S.D.N.Y.1990) (summary judgment granted in absence of facts or allegations from which it might be inferred that the decision to house plaintiff with HIV-positive cellmate without informing him of the HIV test results evidenced deliberate indifference to medical needs); *Welch v. Sheriff, Lubbock*

*County, Texas,* 734 F.Supp. 765 (N.D.Tex. 1990) (holding that the United States Constitution does not require the segregation of HIV-positive inmates from the general inmate population); *Feigley v. Fulcomer,* 720 F.Supp. 475 (M.D.Pa.1989) (prison officials did not violate Eighth Amendment by failing to routinely test for the HIV virus or by failing to segregate carriers of the AIDS virus); *Cameron v. Metcuz,* 705 F.Supp. 454, 458–60 (N.D.Ind.1989) (failure to segregate an inmate with AIDS who had a known violent character was not an Eighth Amendment violation because the prison officials did not intentionally or recklessly expose the prisoner to a known risk of violence from another inmate).

■ Plaintiff's amended allegations constitute a challenge to the conditions of his confinement which must be analyzed under the Eighth Amendment's prohibition against "cruel and unusual punishment." *Wilson, v. Seiter,* 501 U.S. ——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Under *Wilson,* the Court applies both an objective and a subjective test to determine whether specified conditions of confinement violate the Eighth Amendment. The objective test requires an analysis of whether the alleged deprivation was sufficiently serious. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* 501 U.S. at ——, 111 S.Ct. at 2324 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). The subjective portion of the inquiry requires a sufficiently culpable state of mind constituting "deliberate indifference" on the part of the responsible prison officials. *Id.* 501 U.S. at —— – ——, 111 S.Ct. at 2326–27.

■ Under the Eighth Amendment, an inmate must be afforded "adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Wolfish v. Levi,* 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds, Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The protection of inmates against other inmates is a condition of confinement, and the deliberate failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation. *See Berry v. City of Muskogee,* 900 F.2d 1489, 1494–95 (10th Cir.1990); *Harris v. Maynard,* 843 F.2d 414, 416 (10th Cir.1988); *Blankenship v. Meachum,* 840 F.2d 741, 742 (10th Cir.1988).

■ However, plaintiff must present facts showing that he is at risk of contracting AIDS from those HIV-positive inmates, if any, who have stated their intention to infect other inmates. Plaintiff produced no evidence of any express risk that Fitzhugh or any other HIV-infected inmate presented prior to the altercation on February 2, 1991. More importantly, he has produced no competent evidence that any one of the defendants was or is aware of any such risk from Inmate Fitzhugh or any other individual, or that any of the defendants has taken any action or failed to take any action that could be construed as deliberate indifference to the safety of plaintiff or any other inmate from any such alleged risk.

Allegations of a generalized fear of contracting AIDS from allegedly aggressive HIV-positive inmates and conclusory allegations that prison officials were or are aware of such intentions but have done nothing to intervene, are insufficient to state a constitutionally inhumane condition of confinement or a culpable state of mind as required under *Wilson.* Plaintiff has failed to establish the requisite deliberate indifference to a pervasive risk of harm necessary to the viability of his action under 42 U.S.C. § 1983. Dismissal of plaintiff's Complaint therefore is appropriate.

Defendants also are entitled to summary judgment in their favor on the ground that plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment and by 42 U.S.C. § 1983. Although plaintiff's Complaint does not specify in what capacity defendants are being sued, his response to defendants' motion expressly indicates that "each [defendant] is being named in his/her individual capacity for a total of 1.75 million dollars in damages, both actual and punitive." Answer to Defendants' Brief in Support of Their Motion for Dismiss-

al, Judgment on the Pleadings or Summary Judgment, at 3.

 Claims for money damages against state officials acting in their official capacities are barred by the Eleventh Amendment because such suits are in effect a suit against the State itself, and any judgment obtained against such officials, would be satisfied out of the state treasury. *See generally Papasan v. Allain*, 478 U.S. 265, 267–79, 106 S.Ct. 2932, 2934–41, 92 L.Ed.2d 209 (1986); *Kentucky v. Graham*, 473 U.S. 159, 165–68, 105 S.Ct. 3099, 3105–07, 87 L.Ed.2d 114 (1985); *Griess v. State of Colorado*, 841 F.2d 1042, 1045 (10th Cir.1988) (per curiam). Further, because an action against state officials acting in their official capacities is in actuality an action against the State, such individuals are not "persons" within the meaning of 42 U.S.C. § 1983 and therefore are not subject to suit under that statute. *Will v. Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, dismissal of the claims against defendants in their official capacities is mandated under the Eleventh Amendment and by the Supreme Court's holding in *Will*.

 Defendants further contend that they are entitled to qualified immunity for the claims asserted against them in their individual capacities. The Court agrees. Government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Court must determine the issue as to whether the law in question was clearly established when the conduct complained of occurred. *Meade v. Grubbs*, 841 F.2d 1512, 1533 (10th Cir.1988) (citation omitted).

As to plaintiff's original allegations, he cannot demonstrate that the failure to segregate those inmates who have tested HIV-positive from the general inmate population, or that the failure to disclose which inmates have tested HIV-positive to the general prison population, are clearly established violations of the Eighth Amendment in this Circuit.

As to plaintiff's new allegations, although the law is clearly established that prison officials must protect inmates from others known to be violent risks, plaintiff has failed to establish that these individual defendants were aware of any propensity on the part of Inmate Fitzhugh to attempt to infect other inmates, or that any one of these individuals had any personal involvement whatsoever in the events of February 2, 1991. Regarding any potential risk from some unknown and unidentified HIV-infected inmate regarding future possible intentional infection of other inmates is too speculative a claim to warrant the imposition of individual liability on these defendants or any other prison official. Accordingly, defendants also are entitled to dismissal of the claims asserted against them in their individual capacities under the doctrine of qualified immunity.

Therefore, for the reasons fully stated above,

IT IS ORDERED that Defendants' Motion to Dismiss, for Judgment on the Pleadings, or for Summary Judgment, is GRANTED and plaintiff's Complaint shall be DISMISSED in its entirety.