IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

S))))))))))))))Q
No. 93-8034
S))))))))))))))Q

ALTON MONTGOMERY,

                                    Plaintiff-Appellant,

        versus


O.A. "BOB" BROOKSHIRE, Sheriff of
Ector County, Texas, and ECTOR COUNTY,
TEXAS,

                                    Defendants-Appellees.


S))))))))))))))))))))))))))Q
Appeal from the United States District Court for the
Western District of Texas
S))))))))))))))))))))))))))Q
(September 23, 1994)

Before GARWOOD, DAVIS and SMITH, Circuit Judges.

GARWOOD, Circuit Judge:

        Defendant-appellee Ector County Sheriff O.A. "Bob" Brookshire
(Sheriff Brookshire) fired plaintiff-appellant Deputy Alton
Montgomery (Montgomery). Montgomery brought civil rights, age
discrimination, and First Amendment claims against Sheriff
Brookshire and Ector County. The district court dismissed the
civil rights claims and granted summary judgment in favor of the
defendants on the age discrimination and First Amendment claims.
Montgomery appeals only the district court's order granting summary

judgment on the age discrimination claim. We reverse the district court's grant of summary judgment on that claim and remand the cause.

## Facts and Proceedings Below

Sheriff Brookshire hired Montgomery in 1982 as a deputy sheriff to investigate alleged hot check and fraud violations. In July 1991, after receiving a telephone call from his daughter complaining of unauthorized entry into her home by her ex-husband, Jimmy Browning, Montgomery prepared a crime report and had a warrant issued for his ex-son-in-law's arrest. On November 25, 1991, Jimmy Browning was served with the warrant for his arrest when he appeared in court concerning child support arrearage. That same day, Sheriff Brookshire called Montgomery into his office to discuss the Browning case and the Sheriff's Department's policy against officers working on cases for family members. Montgomery responded: "If you force me to make a choice, my family comes first, and the Sheriff's Department can go to hell." The following day, Sheriff Brookshire terminated Montgomery's employment with the Ector County Sheriff's Department.

Montgomery filed an action against Sheriff Brookshire and Ector County seeking damages for civil rights violations under 42 U.S.C. § 1983 as a result of his termination, and thereafter he amended his complaint to include claims for damages under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, and the First Amendment to the United States Constitution. The district court dismissed Montgomery's civil rights claims and

2

subsequently issued an order granting summary judgment in favor of the defendants on the remaining claims. Montgomery abandoned his appeal of the First Amendment claim, and thus only appealed the district court's grant of summary judgment concerning the ADEA. The district court based its summary judgment on the ADEA claim on the conclusion that Montgomery came within the "personal staff" exception to the ADEA. We find the record insufficient to support this determination, and, accordingly, we reverse the summary judgment on the ADEA claim and remand the cause for further proceedings.

## Discussion

This Court reviews a grant of summary judgement *de novo*. *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1297 (5th Cir. 1993); *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is only appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). As the party moving for summary judgment, Sheriff Brookshire carries the initial burden of pointing to an absence of evidence to support the non-movant's case. *Burglin*, 4 F.3d at 1297; *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553 (1986). After consulting the applicable substantive law to determine what facts and issues are material, we review the evidence in a light most favorable to the non-movant relating to those issues. *Burglin*, 4 F.3d at 1297. If Montgomery, as the non-moving party, brings forth summary judgment evidence of specific facts in support of allegations essential to

3

his claim, a genuine issue is presented and summary judgment must be denied. *Id.; Celotex Corp.*, 106 S.Ct. at 2555.

The ADEA makes it unlawful to discharge an employee because of the employee's age. 29 U.S.C. § 623(a)(1). Section 630(f) of the ADEA defines "employee" as:

> "[A]n individual employed by any employer except that the term 'employee' shall *not* include [1] *any person elected to public office* in any State or political subdivision of any State by the qualified voters thereof, *or* [2] *any person chosen by such officer to be on such officer's personal staff*, or [3] an appointee on the policymaking level or an immediate adviser . . .." 29 U.S.C. § 630(f) (emphasis added).

The district court concluded that Montgomery could not prevail in his ADEA claim because he fell within the second exception to the ADEA definition of "employee," the personal staff exception. On this basis, the court granted the defendants' motion for summary judgment. We do not reach the same conclusion.

Because the personal staff exception in the ADEA is identical to the personal staff exemption found in Title VII, 42 U.S.C. § 2000e(f), courts construe the two exceptions consistently. *Monce v. City of San Diego*, 895 F.2d 560, 561 (9th Cir. 1990); *E.E.O.C. v. Reno*, 758 F.2d 581, 583-84 & n.7 (11th Cir. 1985); *Ingram v. Dallas County*, 688 F.Supp. 1146, 1160 (N.D. Tex. 1988). We identified several factors in *Teneyuca v. Bexar County*, 767 F.2d 148 (5th Cir. 1985), to guide the determination whether an employee falls within the personal staff exemption and thus is excluded from the coverage of Title VII:

> "(1) [W]hether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that

4

elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position." *Id*. at 151.

As we noted in *Teneyuca*, "[t]his list of factors is not intended to be exhaustive" and we are to "look to the 'nature and circumstances of the employment relationship between the complaining individual and the elected official.'" *Id*. at 151-52.

Consideration of the six factors is also tempered by the legislative intent that the exemption be narrowly construed. *Clark v. Tarrant County*, 798 F.2d 736, 742 (5th Cir. 1986); *Teneyuca*, 767 F.2d at 152 ("Congress intended for the personal staff exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official"). The determination of employee status in this respect is ultimately governed by federal rather than state law, and state law is relevant only insofar as it describes the plaintiff's position, including his duties and the way he is hired, supervised, and fired. *Clark*, 798 F.2d at 742; *see also Caldron v. Martin County*, 639 F.2d 271, 273 (5th Cir. 1981). Courts generally concentrate on the "nature and circumstances of the employment relationship between the complaining individual and the elected official to determine if the exception applies." *Teneyuca*, 767 F.2d at 152. We have also emphasized that "the highly factual nature of the inquiry necessary to the determination of the 'personal staff' exception does not lend itself well to disposition by summary

5

judgment." *Id*.[1]

After considering the *Teneyuca* factors, the district court concluded the instant case presented "precisely the same" situation as *Owens v. Rush*, 654 F.2d 1370 (10th Cir. 1981). In *Owens*, the Tenth Circuit determined that an undersheriff was on the "personal staff" of the elected sheriff for the purposes of Title VII because (1) the sheriff had plenary powers of appointment and removal, (2) the undersheriff was personally accountable only to the sheriff, (3) the sheriff was both politically and civilly liable for any misconduct by the undersheriff in his official duties, (4) the undersheriff had a very close working relationship with the sheriff, and (5) the undersheriff was second in authority under the sheriff, acted on the sheriff's behalf when he was not available, and served as sheriff in the event of a vacancy in that office. *Id*. at 1376. Review of the evidence in the present case reveals that the position of "deputy sheriff" in the Ector County Sheriff's Department could hardly be described as "precisely the same" as the

---

[1] We concluded summary judgment was appropriate in *Teneyuca* because (1) several of the factors were statutorily determined; (2) the actual situation did not appear to differ from that provided by statute; and (3) the plaintiff wholly failed to meet the requirements of FED.R.CIV.P. 56(e) in responding to the defendants' motion for summary judgment. *Teneyuca*, 767 F.2d at 152-53. Because our conclusion rested so heavily on the plaintiff's failure to respond, we cautioned that:

"This is not to say that as a matter of law a plaintiff could never demonstrate that material facts exist such that summary judgment would be inappropriate in another similar case against this or another similar defendant. This Court holds only that in this case Teneyuca failed to demonstrate the presence of material factual issues so as to defeat the defendants' motion for summary judgment." *Id*. at 153.

"undersheriff" position in *Owens*. In fact, the differences between these two positions compel a different result.

We recognize that Montgomery's position as deputy sheriff appears to satisfy the first three factors from *Teneyuca*. The first factor, that Sheriff Brookshire is an elected official with plenary power to hire and fire deputy sheriffs, is statutorily determined and undisputed. TEX. LOC. GOVT. CODE ANN. § 85.003(c) (West 1988) ("A deputy serves at the pleasure of the sheriff"); *Samaniego v. Arguelles*, 737 S.W.2d 88, 89 (Tex. App.SQEl Paso 1988, no writ) ("the sheriff can terminate the deputy's tenure at will"). As to factors two and three, a deputy is personally accountable to the sheriff because "[t]he sheriff is responsible for the official acts of his deputies." *Samaniego*, 737 S.W.2d at 89; *see* TEX. LOC. GOVT. CODE ANN. § 85.003(d).[2] Similarly, as uniformed officials, all deputies regardless of position or rank represent the sheriff in the eyes of the public to some extent because the public is often generally unaware of the hierarchy within the sheriff's department.

_____

[2]     Montgomery does not dispute the sheriff's ultimate responsibility for the actions of the deputies. He challenges factor three, however, on the basis that he was not personally accountable *only* to the sheriff, but rather to several intermediate supervisors, including Herbert Gibson and Mark Donaldson. His argument misstates the purpose of factor three. This factor requires that the plaintiff be personally accountable only to the particular elected official, as opposed to being accountable to the county, or a multi-person court, or some form of board or panel. The existence of intermediaries does not shield the sheriff from liability for the deputy's official misconduct, nor does it remove the deputy's personal accountability to the sheriff. *See* TEX. LOC. GOVT. CODE ANN. § 85.003 (d),(e). Of course, the layers of supervision separating Montgomery and Sheriff Brookshire will be very relevant to our consideration of the fifth *Teneyuca* factor.

7

The evidence concerning *Teneyuca* factors four through six, however, demonstrates that genuine issues of material fact remain, and thus disposition by summary judgment is inappropriate at this point. *Teneyuca*'s fourth factor requires the Court to consider whether the sheriff exercises a considerable amount of control over deputies in Montgomery's position. Facts asserted in Montgomery's affidavit indicate that Sheriff Brookshire barely exhibited any control over Montgomery's day-to-day activities.[3] Since Sheriff Brookshire has offered nothing to rebut this assertion, there at least exists a disputed issue of fact yet to be resolved. Factor five concerns Montgomery's rank within the organization's command structure. The "personal staff" exception becomes less applicable the lower the particular employee's position because the exception was primarily intended to exempt the elected official's immediate subordinates or those "who are his first line advisors." See *Owens*, 654 F.2d at 1375 (quoting 118 CONG. REC. 4492-92 (1972)). The facts are undisputed that: (1) the Ector County Sheriff's Department consisted of 113 officers plus various clerical workers; (2) the managerial hierarchy, in descending order of authority, consisted of Sheriff Brookshire at the top, followed by the

---

[3] By its terms, factor four could be read to inquire whether the sheriff had the *power to exercise* a considerable amount of control over the deputySQwithout regard to whether customarily he actually utilized this authority on a day-to-day basis. Such a reading, however, would merely duplicate considerations addressed in factors one and two. Construing factor four to inquire whether customarily the sheriff *actually exercises* control over one alleged to be a member of his "personal staff" seems more in line with the narrow construction we are required to give this exception.

captains, inspectors, sergeants, lieutenants, and finally deputy sheriffs; and (3) as a deputy sheriff, Montgomery occupied the lowest rung on the chain of command and exercised no supervisory authority over any other officers.[4] In direct contrast to the "undersheriff" in *Owens*, deputy sheriffs in Ector County could not possibly be characterized as the Sheriff's first line advisors.

The sixth *Teneyuca* factor, the actual intimacy of the working relationship between Montgomery and Sheriff Brookshire, strongly militates against finding that Montgomery fell within the personal staff exception. Montgomery asserts that at most he may have discussed business with Sheriff Brookshire once a month and that the two did not consult with each other regarding their work.[5] Sheriff Brookshire does not dispute this testimony and even concedes that due to the size of the Department there was no actual intimacy in the working relationship.

Ultimately, under Sheriff Brookshire's construction, his "personal staff" would encompass all 113 law enforcement officials

---

[4]    Sheriff Brookshire offers no evidence to challenge these findings, but simply argues that section 85.003 of the Texas Local Government Code somehow negates the relevance of the fifth factor because the sheriff is given plenary power over all deputies regardless of their position within the department. We reject this argument. The concerns reflected in section 85.003 are aptly addressed in the first three factors of *Teneyuca* and are at most marginally relevant to factor five.

[5]    This factor demonstrates the fundamental difference between *Owens* and the instant case. The plaintiff in *Owens* admitted that as undersheriff he had "a very close working relationship with the sheriff." *Owens*, 654 F.2d at 1376. The Court recognized that such an intimate relationship was necessary since the undersheriff was second in authority to the sheriff and acted on the sheriff's behalf when he was absent. *Id*.

9

in the Ector County Sheriff's Department—thus exempting every employee except the civilian clerical staff. Giving the personal staff exception such a breadth is inconsistent with the congressional intent that the exception be narrowly construed. *See Teneyuca*, 767 F.2d at 150.[6]

Finally, we recognize that this Court may affirm a grant of summary judgment on grounds other than those relied upon by the district court when the record contains an adequate and independent basis for the result. *Chauvin v. Tandy Corp.*, 984 F.2d 695, 697 (5th Cir. 1993). While we disagree with the district court's order granting summary disposition based on the personal staff exception, some skepticism may be in order regarding this ADEA claim's chance of success on the merits. To prove age discrimination, a plaintiff must first establish a *prima facie* case, generally by showing (1) that he was within the protected age group, (2) that he was

---

[6] The broadest application of this exception we have found is *Monce v. City of San Diego*, 895 F.2d 560 (9th Cir. 1990). In *Monce*, the Ninth Circuit determined that a deputy city attorney was a member of the City Attorney's "personal staff" because the deputy "holds office 'at the pleasure of' the City Attorney," represented the principal in the eyes of the public, and "was empowered to exercise the legal authority of that office;" even though the deputy "did not have an immediate personal relationship with the City Attorney and was not personally entrusted with a great deal of responsibility." *Id*. at 561. Even *Monce* does not stretch the exception as far as Brookshire advocates. So far as is apparent from the *Monce* opinion, San Diego's deputy city attorneys may rank just below the City Attorney. By contrast, the deputy sheriffs in Ector County are clearly bottom-level employees. In addition, the staff of a city attorney's office consists of numerous employees other than deputy city attorneys, including briefing attorneys, investigators, paralegals, and clerical staff. Other considerations may arguably also be pertinent in the context of lawyers in a law office representing an entity such as a city or county.

adversely affected by an employment action (in this case, discharged), (3) that he was replaced by a younger person, and (4) that he was qualified for the job. *Purcell v. Seguin State Bank and Trust Co.*, 999 F.2d 950, 957 (5th Cir. 1993). Establishing a *prima facie* case essentially creates a presumption that the employer unlawfully discriminated against the employee. *St. Mary's Honor Center v. Hicks*, 113 S.Ct. 2741, 2747 (1993). The burden of production then shifts to the defendant to rebut this presumption by presenting evidence that the employee was discharged for a non-discriminatory reason. *Purcell*, 999 F.2d at 957. If the defendant presents such evidence, the plaintiff has the burden of persuading the factfinder that those reasons are pretexts for unlawful discrimination. *Id.; see St. Mary's Honor Center*, 113 S.Ct. at 2747 ("although the . . . presumption shifts the burden of *production* to the defendant, '[t]he ultimate burden of *persuading* the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff'").

In the instant case, Montgomery's situation arguably satisfies the requirements of a *prima facie* case of age discrimination.[7] Sheriff Brookshire, however, appears to have clearly stated a non-discriminatory reason for the employment decision, namely Montgomery's outburst in Sheriff Brookshire's office. Montgomery, a former sheriff himself, has admitted that had one of his deputies

---

[7]    Undisputed testimony reveals that Montgomery was fifty-nine years old when he was terminated, and that he was replaced by a slightly younger officerSQDon Stout, age fifty-two. There does not appear to be any evidence, or even allegation, that Montgomery was generally unqualified for his job.

told him the Sheriff's Department could go to hell, he probably would have fired him as well. This would leave Montgomery the burden of persuading the trier of fact that Sheriff Brookshire's claim of insubordination was a mere pretext for intentional age discrimination. The present record does not appear to support any such finding. The only evidence arguably implying a discriminatory purpose is that Montgomery was within a few months of retirement at the time of his termination. Had Sheriff Brookshire alleged, as an alternate basis for granting summary judgment, that Montgomery's insubordination constituted an adequate and non-discriminatory ground for termination that was not a pretext for age discrimination, we may have affirmed the grant of summary judgment regardless of the reasons relied upon by the district court. However, Sheriff Brookshire's decision not to advance this defense in his motion for summary judgment denied Montgomery the opportunity to respond with evidence possibly showing that the insubordination charge was a pretext for age discrimination. The only basis on which Brookshire sought summary judgment was the personal staff exemption, and that was the sole ground of the district court's decision; such a ground is wholly unrelated to and distinct from whether the discharge was age discriminatory. We therefore conclude that in this case we should not reach the merits of any question other than that on which summary judgment was sought and granted below. *See FDIC v. Laguarta*, 939 F.2d 1231, 1240 (5th Cir. 1991).

**Conclusion**

12

We conclude that under the present record genuine issues of fact remain unresolved regarding the plaintiff's status as an employee under the ADEA; accordingly, the district court's grant of summary judgment is REVERSED, and the cause is REMANDED for further proceedings.

REVERSED and REMANDED