Steven **FICKES**

v.

**JEFFERSON COUNTY, et al.**

No. 1:94–CV–137.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 13, 1995.

Karla JM Rogers, Vidor, TX, Roy Travis McCall, Waldman Smallman Grossman & Carpenter, Beaumont, TX, for plaintiff Steven Fickes.

Steven Fickes, Vidor, TX, pro se.

Richard F. Baker, Steven L. Wiggins, District Attorney's Office, Jefferson County, Beaumont, TX, Roger Neiland Fry, Jefferson County Criminal Dist. Atty., Beaumont, TX, Steven Lee Wiggins, Office of the District Attorney, Beaumont, TX, for defendants Carl Griffith, Jr., Sheriff, Jefferson County, TX, Stat Medical Care, Jefferson County, John Flanagan, Officer, Thomas Picou, Steven A. Square, Larry Frank.

### MEMORANDUM REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HINES, United States Magistrate Judge.

Plaintiff Steven Fickes brings this action under 42 U.S.C. § 1983 against Jefferson County, Texas, Jefferson County Sheriff Carl Griffith, Jr., and Corrections Officers Steven

A. Square, Larry Frank, and Thomas Picou seeking monetary compensation for deprivations of Fourteenth Amendment interests in bodily integrity. The alleged deprivations occurred while plaintiff was a pretrial detainee in the Jefferson County jail. This action is premised on the following theories: failure to protect, denial of medical care, and excessive use of force.

The case was originally referred to the undersigned United States Magistrate Judge by United States District Judge Joe J. Fisher for recommendation on ultimate disposition pursuant to referral order dated March 28, 1986. Consent of the parties was entered on May 9, 1995, to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) (1988).

## I. THE MOTION FOR SUMMARY JUDGMENT

### A. The Motion and Plaintiff's Response

Defendants move for summary judgment on each of plaintiff's grounds of relief. Their motion consists of factual denials of the alleged state of events supporting the claims. For example, as to the failure to protect claim they allege that the officer on duty had no knowledge that plaintiff was being attacked. As to the denial of medical care claim, they allege that plaintiff was timely furnished with all treatments requested. Finally, they claim that no excessive force was used on the plaintiff.

Defendants do not contend that plaintiff's legal bases for relief are unsound; they do not question that plaintiff would be entitled to relief if circumstances were as alleged.

Plaintiff filed responses to the defendants' motion on each claim. These responses amplify some of the factual details absent in the complaint, but also further contradict defendants' version of events.[1] With these additional conflicts in the facts, the potential role for summary judgment diminishes and the importance of live testimony increases.

### B. The Legal Standard

Summary judgment is authorized when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The movant has the burden of demonstrating the lack of a genuine issue as to all material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct 2548, 2553, 91 L.Ed.2d 265 (1986); *Montgomery v. Brookshire*, 34 F.3d 291 (5th Cir.1994). In terms of meeting this burden, it is not sufficient for the movant simply to allege in conclusory fashion that the other party does not have enough evidence to prove his or her case or that the facts are not as claimed in the plaintiff's documents. Rather, the movant must pinpoint the deficient parts of the existing docket. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2548.

In deciding a motion for summary judgment, the court first considers the applicable substantive law to determine what facts and issues are material. *King v. Chide*, 974 F.2d 653, 656 (5th Cir.1992). The court then reviews the evidence relating to those issues in the light most favorable to the nonmoving party. *Id.* If there exist specific facts to support the nonmovant's allegations, a genuine issue is presented. *Montgomery*, 34 F.3d at 294. In other words, there is a genuine issue if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 588 (5th Cir.1995). Because summary judgment is a final adjudication on the merits, courts must employ this device cautiously. *Jackson v. Procunier*, 789 F.2d 307 (5th Cir.1986).

## II. FAILURE TO PROTECT

### A. Factual Background

Plaintiff was detained by the Beaumont Police Department on April 13, 1992 on suspicion of burglary. Plaintiff alleges he was a first-time offender and that he was misclassified as a violent offender and placed in a cell with nine other inmates held on suspicion of

---

1. Counsel for both sides are admonished that a brief supporting or opposing a motion must, under E.D.TEX.R. 6(c), (d), contain both factual assertions and legal authorities. None of the six briefs received in connection with this motion recited jurisprudence from this circuit or elsewhere.

committing aggravated robbery, delivery of a controlled substance, aggravated assault, attempted murder, murder, and conspiracy to commit murder, among other crimes.

On April 25, 1992 a portion of the jail became flooded due to malfunctioning of the sewage system. Plaintiff alleges that corrections officer Square brought mops, brooms, and squeegees into the cell and left them there. He alleges that seven of his cellmates beat him with the mop and broom handles about the face, neck, chest, and stomach.[2]

Officer Square was making his rounds during the attack. According to plaintiff's version, when Officer Square stopped by the cell, he saw all of the other inmates flee the bruised and bleeding plaintiff and run to their beds. The officer continued on his rounds, allowing the cellmates to resume their attack.

Defendant Square, however, claims that all was quiet when he passed the cell—that the cellmates were playing cards, watching television, and talking.

## B. Legal Standard Governing Failure to Protect Claims

The legal standard governing a pretrial detainee's cause of action for failure to protect is undergoing a period of uncertainty in this circuit. A pretrial detainee has not been convicted and thus may not be punished. As the Supreme Court said in *Bell v. Wolfish:*

> In evaluating the constitutionality of conditions or restrictions of pretrial detention ... we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

*Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979).

■ Because punishment is not allowed, the Cruel and Unusual Punishment Clause of the Eighth Amendment has no applicability to a pretrial detainee. However, a pretrial detainee is protected by the Due Process Clause of the Fourteenth Amendment, which, at least in some instances, accords the detainee rights not enjoyed by a convicted prisoner. *See, e.g., Jones v. Diamond,* 636 F.2d 1364, 1368 (5th Cir.1981).

■ In the context of failure to protect cases, however, this circuit has not been consistent in its statements on whether a pretrial detainee has greater rights than a convicted person. The standard for failure to protect claims brought by *convicted* inmates is "deliberate indifference." *See e.g., Johnston v. Lucas,* 786 F.2d 1254 (5th Cir.1986). An act is committed with "deliberate indifference" if both an objective component and a subjective component are present. *Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Under the objective component, the deprivation must be so serious as to "deprive prisoners of the minimal civilized measures of life's necessities," such as the deprivation of a basic human need. *Wilson v. Seiter,* 501 U.S. 294, 304, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991). Under the subjective requirement, the court looks to the state of mind of the defendant. The subjective prong is met if the official is both aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and also draws the inference. *Farmer,* —— U.S. at ——, 114 S.Ct. at 1979.

Several cases in this circuit have held that the deliberate indifference standard should be applied in the context of pretrial detainees asserting claims of failure to protect. *See, e.g., Sodie v. Canulette,* 973 F.2d 923 (5th Cir.1992); *Williams v. County of El Paso,* 966 F.2d 676 (5th Cir.1992); *see also Grabowski v. Jackson County Pub. Defenders Office,* 47 F.3d 1386, 1398 (5th Cir.1995) (Smith, J., concurring in part and dissenting in part).

2. Plaintiff surmises that the attack commenced because his girlfriend refused to place a three-way call for one of the cellmates to the latter's girlfriend. Defendants allege that the beating ensued when plaintiff used a racial epithet to refer to one of the detainees. The cell contained eight black detainees and two white detainees. Plaintiff alleges that racial tensions were high at the time of plaintiff's detention, as events surrounding the Rodney King beating were unfolding in Los Angeles.

Other cases, however, have held that a different standard applies to failure to protect cases. The majority opinion in *Grabowski,* for example, states that

> in all conditions of confinement actions ... it is not necessary for a pretrial detainee to establish that the official involved acted with "deliberate indifference" in order to establish a due process violation. The test is whether the action was reasonably related to a legitimate government purpose or whether it was done for the purpose of punishment or retaliation.

*Grabowski,* 47 F.3d at 1398. Dicta in *Alberti v. Klevenhagen* conform to this view, although it was not there necessary for the court to answer the question directly of which standard applies, as it was clear that the conduct at issue was also a violation of the Eighth Amendment. *Alberti v. Klevenhagen,* 790 F.2d 1220, 1224 (5th Cir.1986); *cf. Stokes v. Delcambre,* 710 F.2d 1120, 1124 (5th Cir.1983).[3] As noted below,[4] however, resolution of this debate is unnecessary to decide this summary judgment motion.

### C. Application to the Defendants

#### 1. Jefferson County

Governmental bodies cannot be held liable under 42 U.S.C. § 1983 for the actions of their nonpolicymaking employees on a theory of *respondeat superior. Monell v. Department of Social Servs.,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2035–37, 56 L.Ed.2d 611 (1978). A governmental entity may be liable, however, when an official custom, policy, or procedure of that entity related to hiring or training causes the complained of actions. *Brown v. Bryan County,* 53 F.3d 1410, 1418 (5th Cir.1995). None of the summary judgment proof, including the plaintiff's complaint, points to the existence of any policy that bears in any way on the failure to protect claim. Therefore, summary judgment will be granted in favor of defendant Jefferson County on the failure to protect claim.

#### 2. Sheriff Griffith

Personal involvement is the touchstone of § 1983 jurisprudence. *See generally* Stephen Mendelsohn, *Excessive Use of Force: Seeking redress for Civil Rights Violations,* FLA.B.J., January 1992, at 9; *see also Wanger v. Bonner,* 621 F.2d 675 (5th Cir.1980). Thus, a supervisor is generally not liable under a theory of vicarious liability for actions of a subordinate that amount to a constitutional deprivation unless the supervisor was personally involved in the wrongful conduct or unless that supervisor "implement[s] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir.1987) (quoting *Grandstaff v. City of Borger,* 767 F.2d 161, 169, 170 (5th Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987)); *see also Wanger,* 621 F.2d at 679–81. None of the summary judgment proof alleges that Sheriff Griffith either participated in or instituted a policy concerning the events at issue here. Summary judgment will be granted in favor of Sheriff Griffith on the failure to protect claim.

#### 3. Officers Frank and Picou

Officers Frank and Picou were not personally involved in the events giving rise to the failure to protect claim. Nor are they supervisors who exercise a policy-making function in the jail. Therefore, summary judgment will be granted in their favor on this claim.

#### 4. Officer Square

##### a. Leaving Mops and Brooms in Cell

Plaintiff asserts that Officer Square introduced dangerous weapons into a volatile atmosphere and later failed to remove him

---

**3.** *Grabowski's* extension of the "reasonably related to a legitimate government purpose" test to all conditions of confinement challenges is consistent with the extension of that test beyond the denial of medical care context in earlier cases. *Parker v. Carpenter,* 978 F.2d 190 (5th Cir.1992) (applying this test to a retaliation claim); *Jones v.*

*Diamond,* 636 F.2d 1364 (5th Cir.1981) (applying this test to a claim involving denial of visitation rights).

**4.** See *infra* sec. II.C.4.

from the cell when the officer saw that he had been beaten.

■ Regardless of whether this circuit ultimately adopts the "deliberate indifference" standard or the "legitimate government interest" standard for failure to protect claims brought by pretrial detainees, the initial entry of the "dangerous weapons" into the cell did not violate the Due Process Clause of the Fourteenth Amendment. This is because there was a legitimate governmental purpose motivating the complained-of action.

It is uncontested that there had been a great deal of flooding in the area of plaintiff's cell, and the mops were brought into the cell at the request of one of the cellmates. Bringing an end to a flood which had disrupted several cells certainly qualifies as a legitimate government purpose.

■ The most that can be argued from the existing record about Officer Square's conduct in leaving the mops and brooms with the cellmates is that he was negligent. But the "due process clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty, or property." *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *see also Bowie v. Procunier,* 808 F.2d 1142 (5th Cir.1987). Thus, summary judgment in officer Square's favor is appropriate with respect to any injury sustained by the plaintiff in advance of the time when officer Square made subsequent rounds.

**b. Subsequent Rounds**

■ Whether the beatings that occurred after Officer Square made his rounds can form the basis of § 1983 liability cannot be resolved by this motion for summary judgment. If Officer Square knew of the ongoing attack when he made his rounds and chose to do nothing, this could rise to the level of deliberate indifference. *Cf. Johnston v. Lucas,* 786 F.2d 1254, 1258–60 (5th Cir.1986) (failure to protect case brought by convicted inmate; circuit court, in reversing district court's finding of Eighth Amendment violation due to the lower court's failure to find a conscious, callous indifference on the part of prison officials involved, implied that officials

responsible for transfer of inmate onto unit housing another prisoner with whom that inmate had had violent altercations, would have been liable for Eighth Amendment violation if requisite state of mind had been established).

Officer Square claims that the fight did not erupt until after he had made his rounds. This sort of credibility determination is not appropriately resolved on a motion for summary judgment. *See, e.g., Berry v. Armstrong Rubber Co.,* 989 F.2d 822, 824 (5th Cir.1993). Summary judgment will be denied as to defendant Square for any injury sustained by the plaintiff after Officer Square made his rounds.

### III. DENIAL OF MEDICAL CARE

#### A. Factual Background

After the beating, Fickes made numerous trips to the infirmary. He claims doctors and nurses at the infirmary told him he was suffering from simple anxiety related to the beating. Plaintiff requested and received outside medical treatment. Records of the outside doctors reveal that he was diagnosed with two herniated disks in his neck as well as with a perforated ear drum and permanent nerve damage to his inner ear serious enough to require a hearing aid.

#### B. Legal Standard Governing Denial of Medical Care Claims

■ The Fifth Circuit has been more consistent in its rulings on the standard to apply in denial of medical care cases brought by pretrial detainees than it has been in failure to protect cases. A pretrial detainee is "entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate government objective." *Cupit v. Jones,* 835 F.2d 82, 85 (5th Cir.1987); *see also Parker v. Carpenter,* 978 F.2d 190, 192 (5th Cir.1992); *Sodie v. Canulette,* 973 F.2d 923 (5th Cir.1992). *But see Banana v. McNeel,* 5 F.3d 1495 (5th Cir. 1993) (applying the deliberate indifference standard to a denial of medical care claim brought by a pretrial detainee). Unfortunately, these cases do not prove helpful in resolving the inherently fact-specific inquiry

of whether medical care is reasonable in a given case.

## C. Application to the Defendants

### 1. Jefferson County and Sheriff Griffith

■ As in the failure to protect case, this court need not be concerned now with the intricacies of this standard. The reason is that plaintiff has improperly plead and named the wrong parties in this cause of action.

The essence of both the plaintiff's complaint and his memorandum in opposition to summary judgment is that the necessary medical treatments could not be obtained at the jail's infirmary, that outside treatments were delayed, and that the delays were responsible for aggravating his conditions.

As noted above in connection with the failure to protect claim, county liability under § 1983 can only be established if the plaintiff can point to customs or policies of the county depriving the plaintiff of constitutional rights. *Colle v. Brazos County*, 981 F.2d 237, 244 (5th Cir.1993). A "sheriff is without question the county's final policymaker in the area of law enforcement Thus a municipality ... can be held accountable for the ... unconstitutional actions of [its sheriff]." *Id.*

"An official policy is 'a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.'" *Id.* at 244–45 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984) (en banc)). Further, "[a] municipal 'policy' must be a deliberate and conscious choice by a municipality's policy-maker. While the municipal policymaker's failure to adopt a precaution can be the basis for § 1983 liability, such omission must amount to an intentional choice, not merely negligent oversight." *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir.1992) (citations omitted). Thus, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a government entity." *Colle*, 981 F.2d at 245.

It is true that plaintiff has liberally sprinkled throughout his complaint generic assertions that the defendants were acting in accordance with (an apparently ill-defined) policy to deprive pretrial detainees of their constitutional rights. However, inasmuch as plaintiff has not pointed to any actual facts specifically indicating of a county-initiated or sheriff-initiated policy to deprive detainees of medical care, this cause of action will be dismissed against these defendants.

### 2. Officers Square, Frank, and Picou

The docket does not reflect any personal involvement by these defendants in decision making concerning plaintiff's medical needs. Therefore, summary judgment will be granted in their favor on the denial of medical care claim.

## IV. EXCESSIVE USE OF FORCE

### A. Factual Background

Finally, plaintiff alleges that on November 4, 1992 he received permission from a lieutenant in the internal affairs unit to move to a new cell. He claims he sought a new assignment due to fear that another violent episode could occur were he to continue to share a cell with other detainees. He claims that as he was proceeding to his new cell he was stopped in the hallway by Officer Larry Frank. Upon being told that plaintiff was going to a new cell, Officer Frank ordered plaintiff to take cell number nine, which he would share with a violent and mentally disturbed detainee. Plaintiff informed Officer Frank that the internal affairs lieutenant had given him the option of taking cell four, which was unoccupied. When Officer Frank insisted on cell nine, plaintiff grabbed the banister of the stairs and refused to proceed.

At that point, Officer Picou approached. According to plaintiff, the two officers tried to pry the plaintiff from the railing. At first unsuccessful, they proceeded, asserts plaintiff, to punch him in the back and sides, to pull his hair, and to put him in a headlock. Plaintiff claims he pleaded for the officers to stop, and informed them that he had a preexisting neck injury. Plaintiff claims that he fainted and that the neck injury he had earlier sustained was aggravated. Plaintiff's complaint alleges that he had to be taken to

the infirmary and that he did not wake up for an hour.

Defendants, however, claim that no excessive force was used. They further claim that plaintiff did not faint but simply let go of the banister and fell. They allege that there was no real injury and that plaintiff was able to pull himself up and walk to the infirmary.

### B. Legal Standard Governing Excessive Use of Force Claims

The Fifth Circuit's test for analyzing excessive force claims by pretrial detainees is " 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.' " *Valencia v. Wiggins,* 981 F.2d 1440, 1446 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993) (quoting *Hudson v. McMillian,* 503 U.S. 1, 6, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992)); *see also Brothers v. Klevenhagen,* 28 F.3d 452, 455–56 (5th Cir. 1994); *Rankin v. Klevenhagen,* 5 F.3d 103, 106 (5th Cir.1993). Courts are to consider the following factors in making a ruling: (1) the need for the application of force; (2) whether a threat was reasonably perceived by the detention official applying the force; (3) whether the detention facility official was in a situation requiring immediate and decisive action; (4) any efforts made to temper the severity of a forceful response. *Valencia,* 981 F.2d at 1446–47.

### C. Application to the Defendants

#### 1. Officers Frank and Picou

Inherent in the *Valencia* standard is a recognition that force is oftentimes both necessary and appropriate in the prison environment in order to gain compliance with a corrections officer's order. The *Valencia* standard is flexible enough to sanction an officer's decision to increase the amount of force applied when, as here, resistance by the prisoner increases and the amount of force initially applied proves inadequate to remedy the situation. However, the court cannot on the present record conclude as a matter of law that plaintiff raises no genuine issue of material fact worthy of being resolved by live testimony on his excessive use of force claim.

This *Valencia* standard mandates a highly fact-specific inquiry. It is appropriate to further develop the facts before rendering a decision on the use of force claim. Live testimony permits the trier of fact to make informed credibility judgments; live testimony is especially helpful when, as here, the scenarios painted by the two sides are so diametrically opposed.

If, as plaintiff asserts, the officers continued to exert force directly on plaintiff's neck by means of a headlock or "full nelson" hold after plaintiff had announced he had an injured neck, that would raise a question as to whether the force was being applied not to gain compliance but instead for the very purpose of causing harm. Further, if plaintiff was indeed unconscious for an hour, that would raise an issue as to whether force above and beyond the amount reasonably needed to gain compliance was applied. The defendants' summary judgment motion will be denied as to defendants Frank and Picou.

#### 2. Jefferson County and Sheriff Griffith

Other than the conclusory assertion that "Jefferson County and Sheriff Griffin [sic] have refused and continue to fail to provide or enforce lawful and proper guidelines to ensure that jail staff employees cease from subjecting pretrial detainees to a deprivation of their rights [and] privileges ... under the Constitution,"[5] there is no claim that the events giving rise to the excessive use of force claim are in any way connected to a custom or policy of either the county or the sheriff. Further, there was no personal involvement by the sheriff in the use of force episode. Summary judgment is appropriate in favor of these two defendants.

#### 3. Officer Square

As there is no allegation that officer Square was personally involved in this epi-

---

5. Plaintiff's memorandum in opposition to defendants' summary judgment motion on the excessive force claim does not allege the existence of a policy or practice implemented by either Sheriff Griffith or Jefferson County causing the conduct at issue.

**92**

sode, summary judgment will be granted in his favor on this claim.

### V. CONCLUSION

The motion for summary judgement on the claim of failure to protect will be granted as to Jefferson County, Sheriff Griffith, and Officers Frank and Picou, but denied as to Officer Square.

The motion for summary judgment on the claim of denial of medical care will be granted as to all defendants.

The motion for summary judgment on the claim of excessive use of force will be granted as to Jefferson County, Sheriff Griffith, and Officer Square, but denied as to Officers Frank and Picou.

An order will be entered separately.