Etta TAPLIN Plaintiff—Appellant,

v.

Fred JOHNSON, etc., et al Defendants,

Fred Johnson in his official capacity as Sheriff of Pike County, Mississippi; Annie Johnson Defendants—Appellees.

No. 03–60499.
Summary Calendar

United States Court of Appeals,
Fifth Circuit.

Feb. 11, 2004.

Carey R. Varnado, Paul Bryant Caston, Montague, Pittman & Varnado, Hattiesburg, MS, for Plaintiff–Appellant.

Dennis L. Horn, Horn & Payne, Madison, MS, Kenneth Bryan Rector, Wheeless, Shappley, Bailess & Rector, Vicksburg, MS, for Defendants–Appellees.

Before KING, Chief Judge, and DEMOSS and STEWART, Circuit Judges.

PER CURIAM.[*]

Plaintiff–Appellant Etta Taplin appeals the district court's grant of summary judgment to Defendants Fred Johnson, in his official capacity as Sheriff of Pike County, Mississippi, and Annie Johnson on Taplin's Title VII sexual harassment claim. For the following reasons, we affirm.

## I.  BACKGROUND

### A.  Facts

In 1995, Fred Johnson was elected sheriff of Pike County, Mississippi. Mississippi law grants sheriffs, such as Johnson, the power to appoint and to remove all deputy sheriffs. In accordance with this power, Sheriff Johnson, allegedly with the help of his wife, Annie Johnson, picked Etta Taplin to work as secretary and payroll officer in his office. Taplin began work in January 1996 and worked in the Sheriff's office until her resignation in June 2000.

Over the years, Sheriff Johnson increased Taplin's work responsibilities. By the time of her resignation, Taplin was acting as grant coordinator, office administrator, fiscal officer, and public relations liaison for the Sheriff's office. Taplin worked closely with Sheriff Johnson in performing these duties.

In her role as office administrator, Taplin handled the department's personnel files, sat on the department's grievance committee, and scheduled training for officers and other employees in the department. Taplin claims that she was the "top person" in charge of office operations.

Taplin also had a number of responsibilities regarding fiscal matters. She helped the Sheriff prepare his yearly budget, including determining the appropriate salaries and raises for members of the Sheriff's staff. In addition, Taplin often accompanied Sheriff Johnson to meetings of the Pike County Board of Supervisors and made comments to the Board concerning the office budget. These statements sometimes appeared in the local newspaper. Besides working on the budget for the Sheriff's office, Taplin worked with the jail administrator to prepare a preliminary budget for the jail, which they submitted to Sheriff Johnson. Furthermore, Taplin handled the payroll for the Sheriff's office and reviewed the jail's payroll.

Taplin was also in charge of public relations for the Sheriff's office. With the assistance of the Sheriff Johnson and his chief deputy, Taplin scheduled drug education seminars for schools, organized fingerprinting sessions for businesses and schools, recorded radio commercials, issued press releases, and coordinated neighborhood watch meetings.

Throughout her tenure, Taplin had a strained relationship with Sheriff Johnson's wife. According to Taplin, Ms. Johnson believed that Taplin was having an affair with her husband. At social functions, Ms. Johnson gave Taplin the cold shoulder, sometimes not speaking to her at all. Furthermore, between July 1996 and June 2000, Ms. Johnson was allegedly rude to Taplin on the telephone on at least four occasions. On September 29, 1997, Ms.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Johnson confronted Taplin at the local courthouse. During this confrontation, Ms. Johnson yelled and cursed at Taplin, called her names, and repeatedly poked her in the chest with her finger. Taplin also claims that Ms. Johnson secretly met with some of the employees in the Sheriff's office in an effort to have Taplin's employment terminated.

Taplin repeatedly discussed Ms. Johnson's behavior with Sheriff Johnson, but, according to Taplin, Sheriff Johnson did not take any action. In June 2000, Taplin resigned, allegedly because of ongoing harassment from Ms. Johnson, and because Sheriff Johnson failed to take steps to prevent his wife from further harassing her.

## B. Procedural History

In June 2000, Taplin filed a charge of sexual harassment with the Equal Employment Opportunity Commission ("EEOC"). She received a right-to-sue letter from the EEOC in March 2002. The following month, Taplin filed suit against Pike County, Sheriff Johnson in his individual and official capacities, and Ms. Johnson. Taplin's complaint alleges that she was harassed on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (2000). According to the complaint, Taplin was constructively discharged as a result of the hostile work environment created by Ms. Johnson's harassment. In addition, the complaint alleges that Ms. Johnson tortioiusly interfered with Taplin's employment relationship with the County, in violation of Mississippi law.

Defendants Sheriff Johnson, in his official capacity, and Ms. Johnson filed a motion for summary judgment on both claims.[1] The district court granted their motion as to Taplin's Title VII claim, after finding that Taplin was a member of Sheriff Johnson's "personal staff" and, thus, not an "employee" protected by Title VII. The court, however, denied Defendants' motion as to Taplin's state-law claim for tortious interference with an employment relationship. Once Taplin's federal claim was dismissed, however, the district court declined to exercise supplemental jurisdiction over Taplin's state-law claim and, consequently, dismissed the claim without prejudice. Before this court, Taplin appeals only the district court's grant of summary judgment to Defendants on her Title VII claim.

## II. STANDARD OF REVIEW

We review *de novo* a district court's decision to grant summary judgment. *Montgomery v. Brookshire,* 34 F.3d 291, 294 (5th Cir.1994). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether summary judgment is appropriate, we view the evidence in the light most favorable to the non-movant. *Teneyuca v. Bexar County,* 767 F.2d 148, 150 (5th Cir. 1985).

## III. ANALYSIS

Sheriff Johnson and Ms. Johnson claim that Taplin was a member of Sheriff Johnson's "personal staff" and, therefore, that she may not bring suit against them under Title VII. Title VII excludes from its protection "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on

---

1. By agreement of the parties, Defendants Pike County and Sheriff Johnson, in his individual capacity, were voluntarily dismissed from the suit.

such officer's personal staff." 42 U.S.C. § 2000e(f) (2000) (defining "employee" for purposes of Title VII). The district court agreed with Defendants that Taplin was a member of Sheriff Johnson's personal staff and granted summary judgment to Defendants on this ground. On appeal, Taplin argues that the district court erred, because she was not, in fact, a member of Sheriff Johnson's personal staff at the time of her resignation.

In *Teneyuca*, we summarized a non-exhaustive list of factors to consider in deciding whether an individual qualifies as a member of an elected official's personal staff:

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

767 F.2d at 151. As we noted in *Teneyuca*, legislative history of the personal staff exception indicates that the exception should be "narrowly construed" so as to only apply to an elected official's "first line advisers." *Id.* at 152 (citations and internal quotation marks omitted).

Taplin correctly notes that we have cautioned that "the highly factual nature of the inquiry necessary to the determination of the 'personal staff' exception does not lend itself well to disposition by summary judgment." *Id.* at 152. This does not

mean that summary judgment is never appropriate, however. Indeed, we affirmed a grant of summary judgment to the defendants in *Teneyuca*. *Id.* at 153. After carefully reviewing the record, we find that no genuine issue of material fact exists regarding any of the six *Teneyuca* factors in this case; thus, we conclude that the district court did not err by granting summary judgment to Defendants.

Taplin concedes that there are no genuine issues of material fact regarding the first three *Teneyuca* factors. First, under Mississippi law, Sheriff Johnson had plenary powers of appointment and removal with respect to all deputy sheriffs, including Taplin. MISS.CODE ANN. § 19–25–19 (2003). Second, even though Taplin was also accountable to the chief deputy, Taplin was ultimately accountable to Sheriff Johnson, so the second *Teneyuca* factor has been satisfied here as well. *See Montgomery*, 34 F.3d at 295–96 & n. 2 (holding that the this factor was satisfied even though plaintiff was personally accountable to several intermediate supervisors in addition to the sheriff).[2] Third, Taplin, as the de facto public relations liaison, often represented Sheriff Johnson in the eyes of the public. Thus, the first three factors all point in the direction of Taplin's having been a member of Sheriff Johnson's personal staff.

Taplin nevertheless contends that genuine issues of material fact exist as to the remaining three factors, which should preclude summary judgment in this case. First, she claims that Sheriff Johnson did not exercise much day-to-day control over her activities; instead, the Sheriff was concerned mainly with her finished work product. Second, Taplin argues that she was not next in command in the office, since the chief deputy was above her in the

---

2. In *Montgomery*, the plaintiff brought suit under the Age Discrimination in Employment Act, rather than Title VII. The personal staff exceptions of the two statutes, however, are identical. *Montgomery*, 34 F.3d at 294.

command structure. Third, Taplin claims that she did not share a more intimate working relationship with Sheriff Johnson than any other staff member shared with him. The evidence provided by Taplin, however, does not support these assertions.

The fourth factor, whether the elected official exercises a considerable amount of control over the position, requires us to consider whether Sheriff Johnson actually exercised control over Taplin's day-to-day activities. *Montgomery,* 34 F.3d at 296 & n. 3. In her deposition, Taplin conceded that she and the Sheriff "worked very closely together." Taplin characterized Sheriff Johnson as her "boss" and said that Sheriff Johnson decided what her duties and job tasks were. Taplin further explained that she worked with Sheriff Johnson in all aspects of her job: She consulted with the Sheriff regarding grants for the office, office training, the budget for both the Sheriff's office and the jail, and public relations. For example, in her public relations capacity, Taplin said that she "tried to coordinate everything with the sheriff and the chief deputy." From Taplin's deposition, it is clear that Sheriff Johnson exercised a considerable amount of control over Taplin's day-to-day activities. Thus, the fourth factor weighs in favor of finding that Taplin was a member of Sheriff Johnson's personal staff.

The fifth factor concerns Taplin's rank within the office's command structure. We have explained that "[t]he 'personal staff' exception becomes less applicable the lower the particular employee's position." *Montgomery,* 34 F.3d at 296. The question here is whether Taplin could be considered one of Sheriff Johnson's "first line advisors." *Id.* (internal quotation marks omitted). The evidence in the summary judgment record demonstrates that Taplin was one of Sheriff Johnson's first line advisors. She worked directly with Sheriff Johnson on many important tasks, such as the budget for the Sheriff's office and public relations for the office. Furthermore, in her deposition, Taplin concedes that she was the "top person" regarding office operations. Although Taplin was not next in line to the Sheriff in the office (since the chief deputy was technically above Taplin) this is not determinative. In *Gunaca v. Texas,* we said that where three levels of supervisors separated the investigator from the district attorney, this factor suggested that the investigator was not a member of the district attorney's personal staff. 65 F.3d 467, 472–73 (5th Cir.1995).[3] Here, though, Taplin was only one step removed from the Sheriff in the command structure, and she often reported directly to the Sheriff. Therefore, we find that Taplin's position in the Sheriff's office is consistent with the district court's conclusion that she was a member of his personal staff.

The sixth factor looks at the actual intimacy of the working relationship between Sheriff Johnson and Taplin. *Montgomery,* 34 F.3d at 296. In the past, we have considered such things as whether the plaintiff and the elected official consulted with one another regarding their work and whether they had a close working relationship. *Id.* at 296–97 & n. 5. In her deposition, Taplin admits that she and Sheriff Johnson often consulted one another on various matters and that they "worked very closely together." Consequently, Sheriff Johnson and Taplin's working relationship appears to have been fairly intimate.

Thus, we find that all six *Teneyuca* factors point towards Taplin's having been a

---

**3.** Nevertheless, this did not prevent us from concluding that the investigator was a member of the district attorney's personal staff, and, therefore, not covered by Title VII. *Gunaca,* 65 F.3d at 472–73.

member of Sheriff Johnson's personal staff. Nonetheless, Taplin argues that she should not be considered a member of Sheriff's Johnson's personal staff because, if she falls within this exception to Title VII, then everyone else in the Sheriff's office would as well. Taplin emphasizes that our cases caution against applying the personal staff exception to everyone in a large office because "[g]iving the personal staff exception such a breadth is inconsistent with the congressional intent that the exception be narrowly construed." *Montgomery*, 34 F.3d at 297. Taplin's argument, however, is unpersuasive. There is no evidence that others in the office had such a high level of responsibility with regard to so many important areas, or that others worked as closely with the Sheriff as Taplin did. To the contrary, Taplin's position in the Sheriff's office appears to have been unique. Our finding that Taplin was on Sheriff Johnson's personal staff says nothing about whether others in the office would be on his personal staff as well.

For these reasons, we find that the summary judgment evidence does not raise a genuine issue of material fact as to whether Taplin was a member of Sheriff Johnson's personal staff. Because Taplin qualifies as a member of the Sheriff's personal staff, she is not an "employee" for purposes of Title VII. Thus, the district court did not err in granting summary judgment to Defendants on Taplin's Title VII claim.[4]

## IV. CONCLUSION

Accordingly, the district court's grant of summary judgment to Defendants Sheriff Johnson and Ms. Johnson is AFFIRMED.

---

**4.** Because we affirm the district court's decision on this ground, we need not reach Defen- dants' other arguments in support of their motion for summary judgment.